**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILMONT FRAISER,** : | |
| : | |
| Plaintiff : | |
| : | **CIVIL NO. 3:CV-11-1552** |
| v. : | |
| : | **(Judge Caputo)** |
| **YORK COUNTY MEDICAL DEPT.,** : | |
| *et al.,* : | |
| : | |
| Defendants : | |

**M E M O R A N D U M**

**I.    Introduction**

On August 22, 2011, Plaintiff Wilmont Fraiser, a former detainee of the Bureau of Immigration and Customs Enforcement (ICE), housed at the York County Prison (YCP) in York, Pennsylvania filed this civil rights action pursuant to 42 U.S.C. § 1983 claiming he is being denied appropriate medical care for his eyes resulting in the loss of vision.[1]  He also alleges that he has not received a hot meal while housed at YCP and was not provided any means to cook hot food.  (Doc. 1, Compl.)  Named as Defendants in the Complaint are: the York County Medical Department; Dr. Ronkeal; and YCP Warden, Mary Sabol.[2]

---

[1]  The Court takes judicial notice of the docket in *Fraiser v. Sabol*, No. 3:CV-11-1464 (M.D. Pa. 2012)(J., Caputo).  In this case Mr. Fraiser challenged his continued detention by ICE pending completion of his removal proceedings.  We note that Mr. Fraiser was released from ICE custody, and the YCP, on February 29, 2012.

[2]  The defendants in this action are divided into two groups, medical and correctional, and are represented by separate counsel.  The medical defendants are PrimeCare Medical, Inc. (referred to as the YCP Medical Department) and Erik Von Kiel, D.O. (incorrectly referred to as Dr. Ronkeal).  Warden Sabol is the sole correctional defendant.

Presently before the Court are two motions to dismiss, one filed by the medical defendants, and the other by Warden Sabol. (Docs. 8 and 15). Defendants have briefed their motions, and Mr. Fraiser has filed briefs in opposition to each motion. (Docs. 13, 14 and 17). Thus, the motions are ripe for resolution. For the reasons set forth below, the motions to dismiss will be granted.

**II.     Statement of Facts**

Prior to his ICE detention at YCP, Mr. Frazier was an inmate at the Camp Hill State Correctional Institution in Camp Hill, Pennsylvania. (Doc. 1 at p. 3).[3] Upon his June 24, 2011, arrival at YCP, he advised medical staff that "he had eye problem[s] and was losing his eye [sight]." (*Id*.) As of the date of filing his Complaint, Mr. Frazier states he was seen "6 times" by medical staff. (*Id*.)

Mr. Frazier filed a prison grievance regarding his medical care and received an untimely response from YCP officials. (*Id*.) On July 27, 2011, after threatening to file a lawsuit regarding his lack of medical care, Mr. Frazier was seen by an outside ophthalmologist and "was told what he already knew," that he was losing his eye sight. (*Id*. at p. 4). Mr. Fraiser also claims that he was denied hot food and hot water for cooking. (*Id*.).

Neither Warden Sabol or Dr. Von Kiel are mentioned in the fact section of Mr. Frazier's Compliant.

---

[3] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Electronic Case Filing system (ECF) rather than the page number of the original document.

**III.    Standard of Review**

On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).  To survive a motion to dismiss, a complaint must allege sufficient facts, if accepted as true, state "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678, 129 S.Ct. at 1949.  The court is " 'not bound to accept as true a legal conclusion couched as a factual allegation.' "  *Id*. at 678, 129 S.Ct. at 1950 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965); *see also PA Prison Soc. v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), a district court's "inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus v.*

*George*, 641 F.3d 560, 563 (3d Cir. 2011).  If a party opposing a motion to dismiss does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits and matters of public record.  *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).  The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). However, under no circumstance is a court required to accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would

be inequitable or futile.  See *DelRio-Mocci v. Connonlly Prop., Inc.*, 672 F.3d 241, 251 (3d Cir. 2012).  However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

Finally, an immigration detainee is entitled to the same protections as a pretrial detainee.  *Contant v. Sabol*, 431 F. App'x 177, 178 (3d Cir. 2011)(nonprecedential).  A pretrial detainee is protected by the Due Process Clause of the Fourteenth Amendment.  *Hubbard v. Taylor*, 399 F.3d 150, 157-80 (3d Cir. 2005); *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000).

## IV. Discussion

### A. Denial of Adequate Ophthalmic Care

"[T]he Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2002)(citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)).  Accordingly, the United States Court of Appeals for the Third Circuit has applied the Eighth Amendment standard when analyzing inadequate medical care claims by pretrial detainees.  *Natale*, 318 F.3d at 582.

To establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden City. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).  "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  Accordingly, absent a belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner, the non-medical defendants cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference.  *Id*.  Deliberate indifference, however, can be established by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed*." Estelle*, 429 U.S. at 104-05, 97 S.Ct. at 291.

An inmate's mere disagreement with medical professionals "as to the proper medical treatment" of his medical complaint does not support an Eighth Amendment violation. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Likewise, a claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id*. at 107, 97 S.Ct. at 293. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Spruill,* 372 F.3d at 235; *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Additionally, a section 1983 claim cannot be premised on a theory of *respondeat superior.* In order to establish liability for deprivation of a constitutional right, a party must show the personal involvement of each defendant. *Iqbal*, 556 U.S. 676, 129 S.Ct. at 1948; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71-72

(3d Cir. 2011). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. See *Rode v. Dellarciprete*, 845 F.2d 1195, 1207(3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)(noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

Here, Mr. Frasier states that he came to YCP with bad, and deteriorating, eye sight.[4] Within 60 days of his arrival, he was seen 6 times in the medical unit and on July 27, 2011, by an outside ophthalmologist. (Doc. 1 at pp. 3-4). Based on the allegations of the Complaint it is clear that while housed at YCP, he received some medical care for his eyes. Albeit, the care he received in the form of vision checks, medical screenings, and a visit to an ophthalmologist, did not yield the treatment Mr. Frasier had hoped. Nonetheless, he was indisputably monitored by YCP medical staff, i.e. PrimeCare, and seen by a professional in the field of ophthalmology, who

---

[4] In the Complaint, Mr. Frasier states he arrived at YCP on June 24, 2011, but in a grievance form submitted in conjunction with his opposition materials, he notes he arrived a month earlier, on May 24, 2011. *Compare* Doc. 1 at p. 3 and Doc. 17 at p. 9.

did not recommend any treatment at that time.[5] At most, Mr. Frasier's Complaint demonstrates a difference of opinion over the medical treatment he was receiving. On these facts, as presented by Mr. Frasier, his ophthalmic treatment by PrimeCare and Dr. Von Kiel during the relevant time period was constitutionally acceptable.[6]

We also find that Mr. Frasier fails to state a viable Eighth Amendment medical claim against Warden Sabol.  Warden Sabol, a non-physician, cannot be found deliberately indifferent to Plaintiff's serious medical needs related to his cataracts as Mr. Frasier clearly indicates that the prison medical staff were aware of his vision issues.  *See Durmer,* 991 F.2d at 69.  Likewise, Mr. Frasier does not allege that Warden Sabol had any involvement in his medical care, or that she directed others to violate his rights.  Further, we find that Mr. Frasier has named Warden Sabol based in the theory of *respondeat superior* which is not an acceptable basis to hold this defendant liable in a civil action.  *Iqbal, supra*.

### B.   Denial of Hot Meals

Prisoners are entitled to a nutritionally adequate diet. *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980).  The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the

---

[5] At that time, Mr. Fraiser's cataract surgery was considered by his treating medical team as "elective".  *See* Doc. 13 at p. 5.

[6] Mr. Frazier concedes in his opposition brief that on November 10, 2011, Dr. Bene performed cataract surgery on both eyes at an outside surgical center. (Doc. 13 at p. 2 and 4).

inmates who consume it." *Id.*, 639 F.2d at 571.  "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). However, there is no constitutional right to a hot meal every day. *See Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008)(nonprecedential).

      Accordingly, Mr. Frasier's complaints regarding the presentation of cold meals, simply do not rise to the level of a constitutional infraction.

      An appropriate Order follows.

                                     **/s/ A. Richard Caputo**
                                     **A. RICHARD CAPUTO**
                                     **United States District Judge**

**Date: August 13 , 2012**